IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MID-CENTURY INSURANCE COMPANY,<br><br>Petitioner,<br><br>vs.<br><br>WINDFALL, INC., METTLE, LLC d/b/a METTLE STRATEGIC MARKETING SOLUTIONS, JIM McGOWAN, BROOKE REDPATH, TARA HALLS, TIA METZGER, and MEGAN RICHTER,<br><br>Respondents. | CV 15–146–M–DLC<br><br>ORDER |

Before the Court are the parties' cross-motions for summary judgment in this declaratory judgment action. On January 13, 2016, Petitioner and Counter-Defendant Mid-Century Insurance Co. ("Mid-Century") filed two motions for summary judgment—one motion regarding insurance coverage and the second regarding Respondent and Counter-Plaintiff Tia Metzger's counterclaims. On February 3, 2016, Respondents Windfall, Inc., Mettle, LLC, Marketing Solutions, Jim McGowan, Brooke Redpath, Tara Halls, and Megan Richter filed their cross-motion for summary judgment regarding coverage. On the same day, Metzger

filed her motion for summary judgment on her counterclaims against Mid-Century. For the reasons explained below, the Court denies Respondents' and Metzger's motions and grants both of Mid-Century's motions for summary judgment in their entirety.

## BACKGROUND

This action presents a dispute among the parties regarding whether Mid-Century has a duty to defend the Respondents against litigation pending in state court. Lee Enterprises, owner of local newspaper *The Missoulian*, brought charges against Respondents in the underlying state proceeding, alleging that Respondents wrongfully used Lee Enterprises' confidential and proprietary information to compete with Montana Marketing Group ("MMG"), a marketing and advertising agency that operates on behalf of *The Missoulian*. Mid-Century insures Windfall, Inc. ("Windfall"), which is named as one of the Respondents and which employs or employed McGowan, Richter, and Metzger. Mid-Century accepted the defense of Windfall, McGowan, Richter, and Metzger under a reservation of rights. Metzger has also secured independent counsel.

Five individuals and two business entities are named defendants in the underlying proceeding; the same seven individuals and entities are the Respondents in the present action. All of the individual Respondents worked for

*The Missoulian* and had some connection to the newspaper's advertising department. Each resigned from *The Missoulian* during the spring of 2015. In 2001, McGowan, formerly *The Missoulian*'s Sales Director, formed Windfall, an advertising and marketing agency in Missoula, and he worked there while also employed by *The Missoulian*. Additionally, McGowan, along with Halls and Redpath, owns Respondent Mettle, L.L.C. ("Mettle"), a business based in Missoula that develops marketing strategies for its clients.

In the underlying litigation, Lee Enterprises has brought the following claims: (1) violation of Montana's Uniform Trade Secrets Act; (2) injunctive relief; (3) breach of the implied covenant of good faith and fair dealing; (4) tortious interference with business relations; (5) civil conspiracy; (6) breach of duty of loyalty; (7) unfair competition and misappropriation; (8) conversion; (9) deceit; and (10) constructive fraud. Lee Enterprises seeks injunctive relief and money damages, including punitive damages. On July 30, 2015, Judge Karen Townsend of the Montana Fourth Judicial District Court, Missoula County, denied Lee Enterprises' motion for a preliminary injunction. The case remains pending before Judge Townsend in the state court.

## STANDARD FOR SUMMARY JUDGMENT

A party is entitled to summary judgment if it demonstrates "that there is no

genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate where the evidence produced by the parties permits only one conclusion. *Mont. Pub. Interest Research Group (MontPIRG) v. Johnson*, 361 F. Supp. 2d 1222, 1226–27 (D. Mont. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).

If the moving party shows that the evidence does not permit a conclusion in favor of the nonmoving party, the burden shifts to the nonmoving party. The party opposing the motion "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The Court looks to "whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law." *MontPIRG*, 361 F. Supp. 2d at 1227 (citing *Anderson*, 477 U.S. at 251–52).

**ANALYSIS**

Mid-Century argues that it is entitled to judgment as a matter of law because Windfall's insurance policy does not provide coverage for the allegations against Respondents in the underlying state proceeding. Respondents agree that summary judgment is appropriate, but they argue that it should be granted in their favor,

claiming that Mid-Century has a duty to cover their defense in the state court litigation.

Additionally, Mid-Century seeks summary judgment on Metzger's claims regarding coverage and bad faith. In return, Metzger seeks summary judgment on her claim that Mid-Century owes her a duty to defend that includes providing her independent counsel.

**I.     COVERAGE**

Mid-Century claims: (1) that Mettle, Halls, and Redpath are not insureds; (2) that there is no initial grant of coverage; and (3) that, even if the policy would otherwise provide coverage, two policy exclusions apply— "knowledge of violation and harm" and "business of advertising." Because it determines that there was no initial grant of coverage, the Court does not reach the issue of exclusions.

**A.     Coverage for Mettle, Halls, and Redpath**

Mid-Century argues that Mettle, Halls, and Redpath are not insureds under the policy. Respondents have not addressed this claim in their brief, and justifiably so—Mid-Century correctly asserts that there is no grant of coverage to these Respondents.

Windfall is the named insured under the Mid-Century policy. Windfall's

Businessowners' Liability insurance policy listed the following as insureds under the policy: Windfall itself; Windfall's "executive officers and directors . . . , but only with respect to their duties as [Windfall's] officers or directors"; Windfall's stockholders, "but only with respect to their liability as stockholders"; and Windfall's employees and managers, "but only for acts within the scope of their employment . . . or while performing duties related to the conduct of [Windfall's] business." (Doc. 1-1 at 89.)

Mettle is a separate business entity from Windfall. It is not a partner, member, or shareholder of Windfall. Halls and Redpath are principals and owners of Mettle, and they have no established connection to Windfall. The policy does not apply to Halls, Redpath, or Mettle. Mid-Century owes to these three Respondents no duty to defend.

### B. The Initial Grant of Coverage

The parties dispute whether Mid-Century's duty to defend was triggered by the filing of the complaint in the underlying matter. Metzger joins Respondents in arguing that the policy extends to the actions alleged in the state court proceeding. Argument on this issue proceeds along two lines: (1) whether there was "bodily injury" or "property damage" caused by an "occurrence," and (2) whether there was a "personal or advertising injury." The Court considers each in turn.

### 1. "Bodily Injury" or "Property Damage"

Mid-Century argues that there was no initial grant of coverage because Lee Enterprises did not allege either "bodily injury" or "property damage" in the underlying litigation. The Court agrees with Mid-Century. There is no coverage under a theory of "bodily injury" or "property damage."

The insurance policy applies to "bodily injury and "property damage" caused by an "occurrence." (Doc. 1-1 at 81.) "Property damage" requires injury to or the loss of use of tangible property. (Doc. 1-1 at 81.) An "occurrence" is an "accident." (Doc. 1-1 at 93.)

Here, there was neither "bodily injury" nor "property damage" because there can be no serious argument in favor of coverage under a theory of bodily injury, and Lee Enterprises has alleged damage only to intellectual and not to tangible property. The policy defines "property damage" as limited to "physical injury" or "loss of use" of "tangible property." (Doc. 1-1 at 94.) Additionally, under Montana law, there is no "property damage" when only economic damage is alleged in the underlying complaint. *See Graber v. State Farm Fire & Cas. Co.*, 797 P.2d 214, 216–217 (Mont. 1990). Accordingly, there was no "property damage" alleged in the underlying complaint when Lee Enterprises only claimed damage to and loss of use of intangible property.

Further, even had there been "property damage," it would not have been caused by an "occurrence." Under Montana law, there is no "occurrence" when the insured acts intentionally and "the consequences of those acts are objectively intended or expected from the standpoint of the insured . . . ." *Employers Mut. Cas. Co. v. Fisher Builders, Inc.* __ P.3d __, 2016 MT 91, ¶ 18 (Mont. 2016). Lee Enterprises has not claimed that Respondents accidentally took and used confidential and proprietary information. Nor has it alleged that Respondents intentionally took its intellectual property but merely accidentally or negligently solicited its customers. If the allegations contained therein are true, the underlying complaint gives rise to only one possibility—that Respondents intended both their actions and the ensuing consequences.

Metzger argues that a factual dispute remains on this issue because Lee Enterprises did not put Respondents on sufficient notice of the nature of confidential information or its misuse. Regardless of the truth of this argument, it is insufficient to show a factual dispute on this issue. There may be a factual dispute as to the wrongfulness of Respondents' conduct; however, there can be no dispute that the same conduct was intentional. This Court does not have the authority to determine whether Respondents have a valid defense in the underlying litigation, and it is irrelevant to this proceeding. Regardless of the merits of

Respondents' defense before the state court, there are no facts suggesting that their conduct constituted an "occurrence" such that Mid-Century's duty to defend was triggered.

### 2. "Personal and Advertising Injury"

Mid-Century also argues that there was no initial grant of coverage because Lee Enterprises did not allege "personal and advertising injury" in the state proceeding. Respondents argue that Mid-Century construes the complaint in the underlying litigation too narrowly and that Lee Enterprises' claims are sufficient to trigger coverage. The Court disagrees. The complaint in the underlying litigation does not allege "personal and advertising injury" as defined by Windfall's insurance policy.

The policy defines "personal and advertising injury" as injury arising from certain specified offenses. The parties dispute whether Lee Enterprises alleged that its injuries arose from two of the policy's enumerated offenses: "oral or written publication of material that violates a person's right of privacy" and "the use of another's advertising idea in your 'advertisements.'" (Doc. 1-1 at 98.) The Court, applying Montana law, construes the policy broadly and resolves ambiguities in favor of coverage. *Wendell v. State Farm Mut. Auto. Ins. Co.*, 974 P.2d 623, 638 (Mont. 1999). The Court considers Respondents' theories of

offenses giving rise to "personal and advertising injury" in turn.

### a. Right of Privacy

First, the Court considers whether Lee Enterprises alleged an "oral or written publication of material that violates a person's right of privacy." The parties dispute whether there was a "publication" and whether any publication "violate[d] a person's right of privacy."

In the underlying litigation, Lee Enterprises alleged that there was a "publication." This Court has defined "publication" to "include[] the dissemination of information to . . . a third party[.]" *Am. Econ. Ins. Co. v. Aspen Way Enter., Inc.*, No. 14–09–BLG–SPW, 2015 WL 5680134, at *8 (D. Mont. 2015). Lee Enterprises claimed that it "has incurred losses and continues to incur damages . . . due to the dissemination of the sensitive and confidential business information that Defendants have misappropriated." (Doc. 1-3 at 11.) The complaint in the underlying litigation sufficiently alleges publication.

Lee Enterprises did not, however, allege "violat[ion of] a person's right of privacy." The parties devote significant attention to this issue. Respondents assert that the Lee Enterprises is a "person" under the policy and that Lee Enterprises alleged a violation of its right to privacy when it claimed that Respondents stole its confidential information. The Court disagrees.

The parties dispute whether the term "person," as used in the policy, is limited to natural persons or inclusive of organizations such as Lee Enterprises. The Court need not consider the scope of the meaning of the term "person" as used throughout the policy. Even if Lee Enterprises were a "person" under the policy,[1] it would have no "right of privacy."

The Montana Supreme Court has not considered the specific question of whether a right to privacy is violated by a private actor's use of a corporation's confidential information such that insurance coverage is triggered. However, the plain text of the Montana Constitution and the court's decisions in other areas of the law foreclose the possibility that such protection exists.

Article II, Section 10 of the Montana Constitution provides:

> The right of *individual* privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.

(Emphasis added.) This provision does not apply to corporations. *Great Falls Trib. v. Mont. Pub. Serv. Comm'n*, 82 P.3d 876, 880 (Mont. 2003). Additionally, it applies only to state and not private action. *State v. Long*, 700 P.2d 153, 157 (Mont. 1985). Lee Enterprises has no right of privacy under the Montana

---

[1] The Court notes that the policy elsewhere distinguishes between "persons" and "organizations," implying that Lee Enterprises is not, in fact, a "person" under the policy.

Constitution; even if it did, it could not have been violated by Respondents as private actors.

There is no statutory or standalone federal constitutional right to privacy. Thus, if Lee Enterprises had a "right of privacy," it would have to exist under the common law. *See, e.g., Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1006 (Fla. 2010) ("[T]he plain meaning of 'right of privacy' is the legal claim one may make for privacy, which is to be gleaned from federal or [state] law, rather than defined by a dictionary.")

Under Montana law, a common law cause of action for invasion of privacy exists when there is a "wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Deserly v. Dep't of Corr.*, 995 P.2d 972, 977 (Mont. 2000) (citations and internal quotation marks omitted). This definition did not originate in Montana but in Ohio. *Sistok v. Nw. Tel. Sys., Inc.*, 615 P.2d 176, 182 (Mont. 1980) (citing *LaCrone v. Ohio Bell Tel. Co.*, 182 N.E.2d 15, 16 (Ohio 1961); *Housch v. Peth*, 133 N.E.2d 340, 341 (Ohio 1956)).

The common law right of privacy is limited to natural persons. Restatement (Second) of Torts § 652I provides: "Except for the appropriation of one's name or likeness, an action for invasion of privacy can be maintained only by a living

individual whose privacy is invaded." Ohio has cited the section with approval in construing its right of privacy, which is identical to and the source of Montana's common-law right. *Rothstein v. Montefiore Home*, 689 N.E.2d 108, 110 (Ohio 1996). Additionally, the United States Supreme Court has cited the same section and suggested that—throughout the nation—the common law right to privacy has never applied to corporations. *FCC v. AT&T, Inc.*, 562 U.S. 397, 406–07 (2011) ("Despite its contention that 'common legal usage' of the word 'person' supports its reading of the term 'personal privacy,' . . . AT&T does not cite a single instance in which this Court or any other . . . has expressly referred to a corporation's 'personal privacy.' . . . On the contrary, treatises in print around the time that Congress drafted [the relevant statutes] reflect the understanding that the specific concept of 'personal privacy,' at least as a matter of common law, did not apply to corporations.") (citations and brackets omitted).

Lee Enterprises has not alleged a violation of its right of privacy because it has no violable right of privacy. As a corporation, it cannot bring a claim limited to natural persons. It is incapable of "mental suffering, shame or humiliation." *Deserly*, 995 P.2d at 977. Further, even if Lee Enterprises could bring a right of privacy claim, another's use of its confidential information would not give rise to the mental and emotional distress associated with infringement of privacy.

> b. *Advertising Idea*

Because the allegations in the underlying complaint cannot give rise to a finding that there was "oral or written publication of material that violates a person's right of privacy," coverage can only be granted under "personal or advertising injury" if Lee Enterprises alleged "the use of [its] advertising idea in [Respondents'] 'advertisements.'" (Doc. 1-1 at 98.) There is no coverage under this theory.

Respondents patch together separate pieces of the underlying complaint, removing them from their contexts. They argue that Lee Enterprises pled facts sufficient for coverage when it alleged "dissemination" and "use" of confidential and proprietary information "created by Lee Enterprises," including "strategic online plans" and "advertising materials" for the "purposes of promoting Windfall." (Doc. 28 at 20 (citing Doc. 1-2 at ¶¶ 23, 26, 37, 29, 31, 32, 34, 37, 59).) The Court disagrees. Lee Enterprises alleged neither that Respondents used its "advertising idea" nor that Respondents created an "advertisement."

Both parties cite to an Eighth Circuit case for a definition of "advertising idea" as "encompass[ing] an idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage." *Am. Simmental Ass'n v. Coregis Ins. Co.*, 282 F.3d 582, 587 (8th Cir.

2002). The underlying complaint does not allow a finding that this definition is met. Lee Enterprises did not allege that Respondents used its "advertising idea" but rather that it used proprietary information regarding historical customers in order to solicit its customers. There is no advertising idea because the allegedly misappropriated information did not include any "idea calling public attention" to Lee Enterprises' products or business. Even if there had been an advertising idea, however, Respondents would not have used it in an "advertisement."

The policy defines an "advertisement" as "a notice that is broadcast or published to the general public or specific market segment about your goods, products or services for the purpose of attracting customers or supporters." (Doc. 1-1 at 97.) Respondents call for a broad interpretation of "broadcast or published," arguing that Lee Enterprises pled sufficient facts when it claimed that Respondents "disseminated" and "misappropriated" its confidential and proprietary information. (Doc. 1-2 at ¶¶ 26, 27.) Even if Respondents could support such a broad interpretation, however, it would be unambiguously limited by the language immediately following the terms in the policy: "to the general public or specific market segment." Again, Lee Enterprises has claimed that Respondents solicited its customers, not that it co-opted its marketing strategy. There was neither an "advertising idea" nor an "advertisement."

There was no initial grant of coverage.[2]  Summary judgment for Mid-Century regarding coverage is appropriate.

## II.  DUTY TO DEFEND METZGER

Respondent and Counter-Plaintiff Tia Metzger argues that Mid-Century acted in bad faith and breached its contractual obligations to her by failing to provide her additional counsel of her choosing.  The Court disagrees.  Mid-Century is entitled to summary judgment on Metzger's counterclaims.

Mid-Century argues that summary judgment is appropriate for three reasons: (1) there was no initial grant of coverage; (2) there was no conflict among Respondents, and, even if there were, Metzger signed a conflict waiver; and (3) Metzger has no bad faith claim against Mid-Century.  The Court addresses each in turn.

### A.  Duty to Defend at the Time the Underlying Complaint Was Filed

As explained above, the Mid-Century policy does not cover Metzger's defense in the underlying action.  Metzger argues that, regardless of the duty to defend at this stage of litigation, Mid-Century had a duty to defend her at the initiation of the underlying action.

---

[2] Because it finds that there was no initial grant of coverage, the Court does not consider whether an exclusion precludes coverage.  It notes, however, that two exclusions likely apply: 1(a) exempts intentional conduct, and 1(i) certain coverage for insureds in the advertising business.

"The duty to defend arises when a complaint against an insured alleges facts, which if proven, would result in coverage." *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004). As explained above, Mid-Century had no duty to defend Metzger at the time the underlying complaint was filed because the allegations in the complaint, if true, did not trigger coverage. For the sake of argument, however, the Court assumes that such coverage existed in order to reach the merits of Metzger's arguments.

### B. Duty to Provide Independent Counsel to Multiple Insureds

Metzger argues that Mid-Century's duty to her included a duty to provide independent counsel because of the possibility of a conflict of interest. The Court disagrees.

Under Montana law, an insurer has a duty to provide independent counsel due to "inconsistent and yes, antagonistic positions that have developed[.]" *St. Paul Fire & Marine Ins. Co. v. Thompson*, 433 P.2d 795, 799 (Mont. 1967). The Montana Supreme Court has not specifically addressed when a potential conflict is sufficiently antagonistic to trigger an insurer's duty to provide independent counsel.

Metzger cites to a Ninth Circuit case applying California law for the proposition that "an insurer must provide individual counsel for the parties where

there is a potential conflict of interest." *St. Paul Fire & Marine Ins. Co. v. Weiner*, 606 F.2d 864, 870 (9th Cir. 1979) (citations omitted). However, this quotation is misleading. There was an actual conflict between the insureds in *Weiner*. Further, the standard in California has since been clarified: "[t]he conflict must be significant, not merely theoretical, actual, not merely potential." *Park Townsend, LLC v. Clarendon Am. Ins. Co.*, 916 F. Supp. 2d 1045, 1055 (N.D. Cal. 2013). Thus, even if California law were instructive here, it would match the standard set forth in *Thompson*.

There are no "inconsistent" or "antagonistic" positions between Respondents in the underlying proceeding such that Mid-Century had a duty to provide independent counsel to Metzger. There was no actual conflict of interest between Metzger and her co-defendants; in fact, when she requested independent counsel, Metzger stated to Mid-Century that "there isn't currently a conflict known." (Doc. 32 at 5.) Mid-Century had no duty to comply with Metzger's request when Metzger herself was unaware of the existence of an actual conflict.

Further, even if there had been a conflict, Metzger waived it. She remains represented by Respondents' counsel in this matter. She also signed a waiver, affirming that she gave informed consent to concurrent representation despite the potential for a future conflict of interest among the insureds. (Doc. 9-1 at 1–2.)

Mid-Century owed no duty to provide independent counsel to Metzger, and it is entitled to judgment as a matter of law on Metzger's counterclaim for coverage.

### C. Bad Faith and UTPA Counterclaims

Finally, Metzger argues that a factual dispute remains as to whether Mid-Century is liable to her for bad faith. Mid-Century argues that her bad faith claim is preempted by the Montana Unfair Trade Practices Act ("UTPA"), and Metzger has not advanced an argument in response. Metzger's bad faith claim is indeed preempted. Mont. Code Ann. § 33–18–242(3)

Metzger argues that a dispute of fact remains on her claims brought under the UTPA. Metzger claims that Mid-Century had an obligation to affirmatively contact her to discuss Lee Enterprises' allegations against her in the underlying action. There is no statutory authority for this argument. Further, it fails because the Montana Supreme Court has "expressly declined to require that insurers seek out facts beyond the complaint." *Landa v. Assurance Co. of Am.*, 307 P.3d 284, 291 (Mont. 2013). Given that there is no duty to defend or to provide independent counsel to Metzger, the Court need not consider Metzger's remaining claims under the UTPA. *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 472 (Mont. 2005).

Mid-Century is entitled to summary judgment on Metzger's counterclaims.

Accordingly, IT IS ORDERED that:

(1) Petitioner and Counterclaim Defendant's Motion for Summary Judgment Regarding Insurance Coverage (Doc. 13) is GRANTED.

(2) Petitioner and Counterclaim Defendant's Motion for Summary Judgment on Tia Metzger's Counterclaims (Doc. 16) is GRANTED.

(3) Respondents' Cross Motion for Summary Judgment (Doc. 27) is DENIED.

(4) Respondent Tia Metzger's Motion for Summary Judgment on Duty to Defend (Doc. 30) is DENIED.

(5) The Clerk of Court shall enter judgment in favor of Petitioner and shall CLOSE this case.

Dated this 23rd day of May, 2016.

_____
Dana L. Christensen, Chief District Judge
United States District Court